**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Dram LLC, et al., | ) | |
| Plaintiffs, | ) | Case No: 13 C 627 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| Jeh Johnson, et al., | ) | |
| Defendants.[1] | ) | |

## ORDER

For the reasons stated below, Plaintiffs' motion for summary judgment [37] is denied and

Defendants' motion for summary judgment [33] is granted. The case is dismissed for lack of

standing. In the event that Plaintiffs have standing, the Court would uphold the AAO's decision

on the merits. Civil case terminated.

## MEMORANDUM OPINION AND ORDER

This case involves the denial of a visa petition by the United Stated Citizenship and

Immigration Services ("USCIS"). Plaintiffs seek approval of the visa petition so they can employ

Shoji Takahashi ("Takahashi") as a chef. Plaintiffs contend that Defendants' denial of the petition

was arbitrary and capricious, an abuse of discretion and otherwise not in accordance with the law.

**Facts**

On November 9, 2004, Dram LLC filed an application for labor certification (Form ETA

750) for a Chef position at $17.00 per hour at its restaurant located at 2020 West Division in

Chicago. (Administrative Record ("AR") 507.) Dram LLC stated that the position required a high

school degree with two years experience in the job offered. (*Id.*) On October 13, 2006, the

---

[1] Pursuant to Federal Rule of Civil Procedure 25, Jeh Johnson is substituted for Rand
Beers and Leon Rodriguez is substituted for Alejandro Mayorkas.

Department of Labor ("DOL") certified Dram LLC's application. (AR 506.) Based on the approved labor certification, Dram LLC filed a Form I-140 immigrant visa petition with USCIS on March 5, 2007 seeking to classify Plaintiff Takahashi as a third preference employment-based immigrant. (AR 500.) In support of the petition, Dram LLC filed tax returns for Dram of Chicago, Inc. along with a letter from Takahashi's prior employer stating that he "worked at Matsu Sushi from Jan. 31 1996 to Jan. 1 1999" as a "chef." (AR 511-83.)

After reviewing Dram LLC's I-140 petition, USCIS issued to Dram LLC's attorney a request for evidence ("RFE"), directing the company to provide evidence of its ability to pay the proffered wage rate by providing the company's tax returns, and if applicable, the company's pay statements for Takahashi. (AR 499.) USCIS acknowledged receipt of the tax returns for Dram of Chicago, Inc., but stated that Dram LLC could not use the tax returns of an unrelated entity as evidence of Dram LLC's ability to pay the proffered wage rate. (*Id*.) On March 19, 2009, Dram LLC's attorney responded to the RFE by filing additional tax returns for Dram of Chicago, Inc. (AR 358-98, 407-25) along with individual tax returns for Miae Lim, the owner of Dram of Chicago, Inc. and Dram LLC. (AR 426-58.) Dram LLC's attorney also submitted W-2 wage statements for Takahashi showing that he was employed by Dram of Chicago, Inc. in 2007 and 2008. (AR 399-400.) In addition, the attorney filed Dram of Chicago, Inc.'s Application for Permanent Employment Certification (ETA Form 9089) for the position of "Sushi Chef" at a wage rate of $11.62 per hour, which DOL certified on April 13, 2007. (AR 483, 485-86, 493.)

Regarding the identity of the petitioning employer, Dram LLC's attorney stated that Dram LLC "should have been terminated a while ago" (AR 325), citing a letter dated March 19, 2009 from Dram LLC's registered agent explaining that it was intended that the company's status lapse, but

due to an erroneous filing with the State of Illinois, the company was still an active entity. (AR 495.) The attorney also stated that "Dram of Chicago, Inc. was created to replace Dram LLC therefore it operates under the same address, same dba name of Mirai Sushi, has the same owner and clients," which the attorney argued made Dram of Chicago, Inc. the successor-in-interest of Dram LLC. (AR 326.)

On April 7, 2009, USCIS denied Dram LLC's I-140 petition. (AR 320.) USCIS explained that Dram LLC's documents failed to demonstrate that the company merely changed its name to "Dram of Chicago, Inc.," since both entities were still registered as an active company and corporation, respectively, with the State of Illinois. (AR 320-21.) USCIS did not consider the April 2007 labor certification for Dram of Chicago, Inc. because the certification expired before counsel submitted it in response to the RFE. (AR 321.)

On May 11, 2009, Dram LLC appealed USCIS's decision to the Administrative Appeals Office ("AAO"). (AR 312.) In support of the appeal, Dram LLC's attorney argued that Miae Lim owned both Dram LLC and Dram of Chicago, Inc., which were created to conduct the same business known as "Mirai Sushi." (AR 305.) Dram LLC's attorney stated that Dram of Chicago, Inc. held the restaurant's liquor license and Dram LLC held the operating trademark, which purportedly explained why neither company could be dissolved and continued jointly to operate the Mirai Sushi restaurant. (*Id.*) The company's attorney further stated that "the companies are merged together and are interdependent, relying on each other for success." (*Id.*) The attorney concluded that "[s]ince both technically operate for the same purpose, and each relies on the other for business, it appears as though they are interchangeable, and should be treated as a cohesive partnership, doing business as Mirai Sushi." (AR 306.)

On June 16, 2011, Dram LLC's new counsel filed with the AAO a letter and additional materials, including Dram of Chicago Inc.'s tax returns, in support of the I-140 petition appeal. (AR 196-302.) Dram LLC's new counsel asserted, contrary to the statements of prior counsel, that Dram of Chicago, Inc. was not created to replace Dram LLC. (AR 196.) Rather, the new counsel stated that Dram LLC and Dram of Chicago, Inc. were established concurrently to operate the same restaurant, Mirai Sushi, which has remained in operation at the same location since 1999. (AR 196-97.) Nevertheless, counsel stated that Dram of Chicago, Inc. was the entity that operated the restaurant and filed the relevant tax returns. (AR 197.) Thus, counsel argued that "Dram of Chicago, Inc." should have been listed on the relevant immigration forms as the sponsoring employer, but "Dram LLC" was mistakenly identified as the employer by former counsel. (*Id*.) The new counsel argued alternatively that Dram of Chicago, Inc. also qualified as a successor-in-interest to Dram LLC because the corporation and company ran the restaurant in concert. (*Id*.)

On June 30, 2012, the AAO dismissed Dram LLC's appeal because the company did not establish an ability to pay the proffered wage rate, or, alternatively that Dram of Chicago, Inc. was the successor-in-interest of Dram LLC. (AR 186-95.) The AAO rejected current counsel's argument that Mirai Sushi filed the original labor certification application because "Dram LLC" was listed on Form ETA-750 as the sponsoring employer. (AR 189, 507, 509.) The AAO stated that a new employer wishing to establish itself as a successor to a prior employer's labor certification application must provide evidence of the transfer of ownership by showing that "the successor not only purchased assets from the predecessor, but also the essential rights and obligations of the predecessor necessary to carry on the business." (AR 192.) Applying this standard to Dram LLC's case, the AAO stated that the record evidence showed that Dram LLC and Dram of Chicago, Inc.

remained separate legal entities throughout their existences. (*Id*.) Dram LLC did not provide any documentary evidence showing that Dram of Chicago, Inc. purchased the assets of Dram LLC or that the two entities merged. *(Id*.) Although Miae Lim owned both legal entities, the AAO stated that the common ownership of two separate legal entities alone is not sufficient to establish that one is the successor of the other. *(Id*.)

The AAO identified an additional defect with the I-140 petition. (AR 193-94.) The AAO found that the petitioner failed to establish that beneficiary Takahashi possessed the required qualifying experience listed on the labor certification application. (AR 194.) Dram LLC's labor certification application stated that the chef position required two years of experience in the job offered. (AR 194, 507.) The regulation requires the employer to establish the beneficiary's work experience by providing a letter from a prior employer with a detailed description of the beneficiary's experience. (AR 194) (citing 8 C.F.R. § 204.5(l)(3)(ii)(A).) The AAO found that the petitioner failed to meet this standard because Takahashi's experience letter did not describe in any detail his prior work experience. *(Id*.)

On August 2, 2013, the AAO reopened Dram LLC's I-140 petition proceedings. (AR 175.) The AAO identified multiple defects in the company's petition, including a failure to establish an actual existing entity qualifying as an employer, the beneficiary's lack of qualifying work experience, and the employer's inability to pay the proffered wage rate. (AR 176-84.) The AAO provided Dram LLC thirty days to submit additional evidence in support of the I-140 petition. (AR 185.) In response to the AAO's motion to reopen, Dram LLC's counsel argued that Dram LLC, Dram of Chicago, Inc., and Mirai Sushi, Inc. "were created in order to run the Mirai Sushi restaurant and were interrelated at all times." (AR 45.) As a result, counsel argued that the three entities

formed an "association," and because "these businesses were all created in order to work together with one another[,] . . . income from any of the entities should be used in order to determine whether the Mirai Sushi restaurant has the ability to pay the prevailing wage." (AR 46.) Although Dram LLC was listed as the petitioning employer on the Form I-140 petition, counsel argued that Dram of Chicago, Inc. "could have also been used to the same effect as they all operate as an association to run Mirai Sushi." (*Id.*)

On December 30, 2013, the AAO again upheld USCIS's denial of Dram LLC's I-140 petition. (AR 22.) On January 2, 2014, the AAO issued an amended decision. (AR 1.) Regarding the proper labor certification application supporting the I-140 petition, the AAO noted that Dram of Chicago, Inc. filed a new labor certification application (ETA Form 9089), dated April 13, 2007 in response to USCIS's initial request for evidence. (AR 3, 485-94.) Although Dram of Chicago, Inc. requested that the corporation's new labor certification application replace Dram LLC's prior labor certification (AR 485), the AAO determined that the DOL rejected this request for refiling because the second labor certification was not identical to Dram LLC's first labor certification. (AR 4.) The educational requirements were different in the two labor certification applications. (AR 4, 486, 507.) Therefore, under DOL's regulations, the agency did not accept the second labor certification application as a replacement of the first application, as evidenced by the fact that DOL did not assign the second application the original date of filing from the first application. (AR 4, 483, 506; *see also* 20 C.F.R. §§ 656.17(d)(1)-(4).)

In addition, USCIS could not accept the second labor certification (ETA Form 9089) dated April 13, 2007 (AR 485-93), as a stand-alone filing in support of the Form I-140 petition because the second labor certification had expired under DOL's regulation before Dram of Chicago, Inc.

filed it with USCIS. (AR 4-5; *see also* 20 C.F.R. § 656.30(b)(2).) Therefore, Dram LLC, or any successor, was legally precluded from using the expired ETA Form 9089. (AR 5.)

Reviewing the documentary evidence, the AAO further found that it was unclear which entity intended to employ Takahashi because the I-140 petition listed "Dram LLC" as the employer, but also listed Dram of Chicago, Inc.'s Federal Employer Identification Number ("FEIN") (AR 9.) In any event, the AAO noted that Dram LLC could no longer qualify as the employer because the company was involuntarily dissolved. (AR 10, 59.) Under Illinois law, as a dissolved company, Dram LLC could no longer conduct business, nor could USCIS grant a petition in the company's name under the governing regulation. (AR 10; *see also* 8 C.F.R. § 205.1(a)(iii)(D).)

The AAO also addressed counsel's separate arguments that Dram of Chicago, Inc. either qualified as a successor-in-interest or could be substituted for Dram LLC on the I-140 petition because of the prior attorney's purported failure to identify the proper employer on the petition. (AR 5-11.) Based on language in a legacy INS precedent decision, the AAO determined that the petitioner was permitted to show that a successor entity had assumed control over the I-140 petition, but this would require the successor-in-interest to satisfy three conditions. (AR 5.)

First, the petitioning successor must fully describe and document the transaction transferring ownership of all, or a relevant part of, the predecessor employer. (*Id.*) Evidence of transfer of ownership must show that the successor not only purchased assets from the predecessor, but also the essential rights and obligations of the predecessor necessary to carry on the business. (*Id.*) Second, the successor must demonstrate that the job opportunity is the same as originally offered on the labor certification. (*Id.*) Third, the successor must prove by a preponderance of the evidence that it is eligible for the immigrant visa in all respects, including ability to pay the proffered wage

rate.  (AR 5-6.)

The AAO found that counsel did not provide any evidence that Dram of Chicago, Inc. purchased the assets or was otherwise assigned the rights and obligations of Dram LLC to qualify as a successor-in-interest.  (AR 6-7.)  Instead, the AAO noted that counsel argued that Dram of Chicago, Inc. and Dram LLC formed an association for the purpose of running the same restaurant, Mirai Sushi.  (AR 7-8.)  The AAO rejected this argument because under Illinois law an association is a distinct business entity organized to conduct specific types of activity, none of which include a restaurant.  (AR 8.)  In addition, the AAO determined that USCIS's regulations provide that only a single employer may file an I-140 petition, not a group of employers claiming to jointly employ the foreign national.  (*Id*.; *see also* 8 C.F.R. § 204.5(c).)

Alternatively, the AAO upheld USCIS's denial of the I-140 petition on two other grounds. (AR 11-20.)  Because Takahashi failed to document his qualifying experience with a letter or other evidence sufficiently detailed, as specified under the regulation, the AAO upheld the denial of the petition based on the employer's failure to show that the intended beneficiary met the experience requirements as outlined on the labor certification application.  (AR 13, 507, 511.)  The AAO provided notice to Dram LLC that Takahashi's prior employment letter was not sufficient (AR 182-83), but the company failed to provide any additional evidence supporting the contention that Takahashi had two years of experience performing all of the duties listed on the labor certification. (AR 13, 46.)  In addition, the AAO upheld USCIS's denial of the I-140 petition based on the company's failure to document that it had the ability to pay the proffered wage rate.  (AR 14-20.)

**Standard of Review**

As a general rule, under the  Administrative Procedures Act ("APA"), review of an agency's

decision is confined to the administrative record to determine whether, based on the information presented to the administrative agency, the agency's decision is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. *Little Co. of Mary Hosp. v. Sebelius*, 587 F. 3d 849, 856 (7th Cir. 2009). The arbitrary and capricious standard of review is a narrow and highly deferential standard. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2006); *Ind. Forest Alliance v. United States Forest Serv.*, 325 F.3d 851, 859 (7th Cir. 2003). To determine whether an agency's decision is arbitrary and capricious, the Court asks if the decision is based on a consideration of the relevant factors and whether there has been clear error of judgment. *Ind. Forest Alliance*, 325 F.3d at 858-59. The Court upholds an administrative decision so long as the agency's path may be reasonably discerned. *Mt. Sinai Hosp. Med. Ctr. v. Shalala*, 196 F.3d 703, 708 (7th Cir. 1999).

**Analysis**

Relevant Background

Under the Immigration and Nationality Act, as amended ("INA"), an "employer" may petition for the classification of an alien seeking admission to the United States based on an offer of permanent employment as a skilled worker under the "third preference" category. *See* 8 U.S.C. §§ 1153(b)(3)(A)(i), 1154(a)(1)(F). Congress delegated to USCIS the authority to adjudicate immigrant visa petitions to classify foreign nationals under the third preference category. *See* Homeland Security Act of 2002, Pub. Law No. 107-296, § 451(b)(1) (Nov. 25, 2002) (6 U.S.C. § 271(b)(1)). Congress also delegated authority to USCIS to establish policies governing the adjudication of immigrant visa petitions. *Id*. § 451(a)(3)(A). Before filing a petition with USCIS to classify an alien as an employment-based immigrant, the INA requires employers to obtain a

certification from the DOL stating that there are no qualified, able, and willing United States workers available to fill the employer's job opportunity. *See* 8 U.S.C. §§ 1153(b)(3)(C), 1182(a)(5)(A)(i)(I); *Zhu v. Gonzales*, 411 F.3d 292, 293 (D.C. Cir. 2005). DOL must also certify that the employment of such aliens will not adversely affect the wages and worker conditions of similarly employed workers in the United States. *See* 8 U.S.C. § 1182(a)(5)(A)(i)(II). DOL's regulations are designed to ensure that the statutory preference favoring the use of domestic workers is carried out whenever possible. *See Prod. Tool Corp. v. ETA*, 688 F.2d 1161, 1168 (7th Cir. 1982).

Since March 28, 2005, DOL's labor certification program requires an "employer" to file an electronic Form ETA-9089 with DOL, but did not change the underlying substantive requirements of the program. *See* 69 Fed. Reg. 77326, 77392 (Dep't of Labor) (Dec. 27, 2004) (20 C.F.R. § 656.17(a)).[2] Regulations require that the employer engage in a good faith effort to recruit United States workers before obtaining certification, *see* 20 C.F.R. §§ 656.17(e), 656.21(f), 656.10(c)(8) (2006). In addition, employers are still required to recruit United States workers at or above the wage rate set by DOL. *See* 20 C.F.R. §§ 656.17(e)-(f), 656.40(a). The employer's job requirements must also represent the "actual minimum requirements for the job opportunity," § 656.17(i)(1), and the employer must establish that the alien possesses the stated minimum requirements for the position. *See Michelle Guervarra Pena PLLC*, 2007-PER-00116 (BALCA June 4, 2008).

On May 17, 2007, DOL published a final rule limiting the validity of labor certifications to 180 days. *See* 72 Fed. Reg. 27,904, 27,924 (Dep't of Labor) (May 17, 2007); *Durable Mfg. v.*

_____

[2] Under prior regulations, an employer intending to hire a foreign worker at a location in the United States for full-time employment was required to file a Form ETA 750 with DOL. *See* 20 C.F.R. §§ 656.3, 656.21(a) (2004); *Gerata Systems America*, 88-INA-344 (BALCA Dec. 16, 1988).

*Dep't of Labor*, 578 F.3d 497, 500 (7th Cir. 2009). Under the final rule, an approved labor certification granted before July 16, 2007 expires if not filed with USCIS in support of an immigrant visa petition within 180 calendar days of July 16, 2007. *See* 72 Fed. Reg. at 27,946 (20 C.F.R. § 656.30(b)(2)). After DOL approves the employer's labor certification application, the employer may file a Form I-140 immigrant visa petition with USCIS seeking to classify the alien beneficiary as an employment-based immigrant. *See* 8 C.F.R. § 204.5(c). USCIS is bound by DOL's determination that there are no able, willing, qualified, and available United States workers to fill the employer's job opportunity, but USCIS has jurisdiction to determine whether the alien beneficiary is qualified for the position in question. *See* 8 C.F.R. § 204.5(l)(3)(ii); *Hoosier Care, Inc. v. Chertoff*, 482 F.3d 987, 988 (7th Cir. 2007); *Silver Dragon Chinese Rest.*, 19 I. & N. Dec. 401, 406 (Comm'r 1986).

In addition, the employer must demonstrate that it has the ability to pay the proffered wage stated on the labor certification application as of the date the employer filed its labor certification application with DOL. *See* 8 C.F.R. §§ 204.5(d), (g)(2); *Great Wall*, 16 I. & N. Dec. 142, 144 (Acting Reg. Comm'r 1977). The burden of proof rests on the employer to establish by a preponderance of evidence that the employer and beneficiary qualify for the benefit sought. *See* 8 U.S.C. § 1361; *Chawathe*, 25 I. & N. Dec. 369, 374-76 (AAO 2010). If USCIS denies the I-140 petition, the employer may appeal the decision to the AAO. *Compare* 8 C.F.R. § 103.3(a)(1)(iii) *with* § 204.5(n)(2). The AAO has *de novo* authority to hear appeals of denied immigrant visa petitions, and may address issues not raised during the initial adjudication. *See Soltane v. Dep't of Justice*, 381 F.3d 143, 145-46 (3d Cir. 2004). The AAO's decision constitutes the final agency action for purposes of judicial review. *See Herrera v. USCIS*, 571 F.3d 881, 885 (9th Cir. 2009).

<u>Identity and Standing of Employer</u>

As a threshold matter, the identity of the petitioner has not been resolved by Plaintiffs. The Form I-140 was filed on August 13, 2007 by Dram LLC; however, the FEIN listed on the Form I-140, 36-4279392, belongs to Dram of Chicago, Inc., a separate entity. Because Plaintiffs did not resolve the issue regarding the identity of the petitioner with independent objective evidence, the AAO denied the petition on that basis. (AR 11.)

Assuming for the moment that Dram LLC is the petitioner, Defendants assert that it lacks the capacity to bring suit because it has been dissolved under Illinois law. (AR 59.) Under the Federal Rules of Civil Procedure 17(b)(3), the capacity of a limited liability company to bring suit is determined by the law of the state where the court is located. Under Illinois law, "a limited liability company continues after dissolution only for the purpose of winding up its business." 805 Ill. Comp. Stat. 180/35-3. As an initial matter, the Court notes that while the parties do not address the issue, Dram LLC changed its name to Dram 2020 LLC on January 22, 2002. (AR 59.) For a reason left unexplained by Plaintiffs, Dram 2020 is not named as a plaintiff, only Dram LLC. The AAO asked in its February 6, 2009 Request for Evidence ("RFE") why the petition was filed in the name of Dram LLC on August 13, 2007 when Dram LLC had changed its name to Dram 2020 LLC on January 22, 2002. (AR 7.) As noted in the AAO's final decision, the petitioner did not provide an explanation for this discrepancy. Because Dram LLC changed its name to Dram 2020 LLC, the latter is the properly-named plaintiff. The Court will not, however, dismiss Dram LLC as a plaintiff solely on the basis of the name change because Federal Rule of Civil Procedure 17(a) allows a real party in interest to ratify, join or substitute in as the real party in interest upon notice. The Court assumes for purposes of this motion that Dram 2020 LLC would do so if given the opportunity.

In any event, as noted, Dram 2020 LLC (formerly Dram LLC) was involuntarily dissolved

on January 8, 2010. Thus, it lacks standing to pursue an appeal of the AAO decision because a favorable decision will not redress any injury since, at the time it filed suit in 2013, it was a dissolved company that could not employ Takahashi as a sushi chef. *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 527–28 (7th Cir. 2001) (to establish Article III standing, "plaintiff must show: (1) injury in fact, meaning an invasion of a legally protectable interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a casual connection between the injury and the conduct complained of such that the injury is fairly traceable to defendant's actions; and (3) that a favorable decision is likely to redress the injury."); *see Paradise Creations, Inc. v. UV Sales, Inc*, 315 F.3d 1304, 1310 (Fed. Cir. 2003) ("[A]t the time the appellant filed its suit, it agrees that it did not have enforceable rights . . . and did not have standing to assert federal jurisdiction").[3]  Even if standing were not an issue, "the dissolution of the petitioner's business would subject the approval of the [I-140] petition to automatic revocation." (AR 10) (citing 8 C.F.R. § 205.1(a)(iii)(D).)

Instead of relying on Dram LLC as the proper petitioner, Plaintiffs argue that Dram of Chicago, Inc., whose FEIN was included on the I-140 petition, has standing because it filed a separate labor certification application for Takahashi. However, as noted by the government, Dram of Chicago, Inc.'s labor certification was invalid as untimely at the time it was submitted to the USCIS. (Gov't's Reply, Dkt. # 38, at 2.)

_____

[3]  While Defendants note that, under Illinois law, a "person winding up a limited liability company's business may preserve the company's business or property as a going concern for a reasonable time, [and] prosecute and defend actions and proceedings, whether civil, criminal, or administrative. . . ," 805 Ill. Comp. Stat. 10/35-4, Plaintiffs fail to address this point and have therefore waived any argument that the pursuit of this appeal is part of the statutory winding up process for Dram LLC.

Also unpersuasive is the argument that Dram of Chicago, Inc., is a successor in interest to Dram LLC, and therefore has standing to pursue this appeal. The AAO, citing to *Dial Auto Repair Shop, Inc.*, 19 I & N Dec. 481 (Comm'r 1986), as binding precedent, noted that a petitioner may establish a valid successor-in-interest relationship for immigration purposes if it satisfies three conditions: (1) the successor must fully describe and document the transaction transferring ownership or all or relevant part of the employer; (2) the petitioning successor must demonstrate that the job opportunity is the same as originally offered on the labor certification; and (3) the petitioning successor must prove by a preponderance of the evidence that it is eligible for the immigrant visa in all respects. (AR 5.)

Although not clear from their brief, it appears that Plaintiffs assert that they have satisfied the successor-in-interest elements because: (1) Dram LLC and Dram of Chicago, Inc. were both created to operate the Mirai Sushi restaurant and both participated in registering relevant business licenses, including liquor licenses and trademarks; and (2) Miae Lim, as the owner of both entities, assumed all of the obligations and liabilities of both companies when she bought out her partners in 2001. Even assuming these facts are true, they fail to satisfy the requirement that Plaintiffs fully describe and document the transaction by which Dram of Chicago, Inc. became the successor in interest to Dram LLC. As noted by Defendants, even if the three entities owned and operated the restaurant together, they are still separate under Illinois law and Plaintiffs fail to point to objective evidence that one legally succeeded the other. In response to the RFE regarding successorship, Plaintiffs provided a copy of the retail and consumption records for the restaurant, owned by Dram of Chicago Inc., however the license was marked "VOID." (AR 11.) Additionally, Petitioner submitted a service mark for Mirai Sushi but showed no evidence that the service mark was

transferred from Dram LLC to Dram of Chicago Inc. (*Id.*)

Plaintiffs next contend that they need not satisfy the successor-in-interest elements because Dram LLC, Dram of Chicago Inc., and Mirai Sushi, Inc.[4] were all created and operated as an association to run the Mirai Sushi restaurant, which employed Takahashi. (AR 49.) In support, Petitioner relies on 20 C.F.R. § 656.3 (2004), a DOL regulation, which states that:

> Employer means a person, association … or corporation which currently has a location within the United States to which U.S. workers may be referred for employment, and which proposes to employ a full time worker at a place within the United States or the authorized representative of such a person, association, firm, or corporation.

Additionally, Petitioner points to the definition of an association as "the act of a number of persons in uniting together for some special purpose or business." (Pls.' Mem. Law Support Mot. Summ. J., Dkt. # 37, at 6) (citing Blacks Law Dictionary 121 (6th ed. 1994).)

As Defendants note and Plaintiffs concede, under Illinois law, associations are distinct business organizations created to operate specific business organizations, of which a restaurant is not one. *See* Ill. Comp. Stat. § 305/1, 315/3, and 320/1. Plaintiffs' assertion that the three entities ran the restaurant Mirai Sushi as an unincorporated association, similar to the National Basketball Association, is unavailing as it is completely unsupported by any authority. Nor of significance is the fact that "Mirai Sushi" is listed alongside Dram LLC or Dram of Chicago, Inc. as a "doing business as" or simply as "Mirai Sushi" on certain unspecified documents. A "doing business as" designation "is merely descriptive of the person or corporation who does business under some other name" and "doing business under another name does not create an entity distinct from the person

---

[4] Mirai Sushi Inc. was incorporated on May 16, 2001 in Illinois and involuntarily dissolved on October 11, 2013. *See* http://www.ilsos.gov/corporatellc/CorporateLlcController (accessed March 17, 2015).

operating the business." *Sims v. Hitachi Const. Truck Mfg., Ltd*, No. 3:09-cv-734-JPG-DGW, 2010 WL 1582230, at *3-4 (S.D. Ill. Apr. 20, 2010) (citation and internal quotation marks omitted). Plaintiffs point to no authority indicating that attaching a doing business as description to several different legal entities creates an association that can act as an employer under the relevant federal regulations.

Plaintiffs cite to *Unique Connections*, 2005-INA-105, 2006 WL 4579917 (BALCA Aug. 9, 2006), for the proposition that:

> [a] change in employers does not necessarily require the filing of a new application where the alien is working in the exact same position, performing the same duties, and in the same area of intended employment for the same salary or wage.

*Id*. at 3. Plaintiffs, however, do not discuss with any specificity the application of this premise to this case or point to any evidence demonstrating that Takahashi would be working in the same position, performing the same duties in the same area. Moreover, common ownership of the various Dram entities does not entitle a labor certification to be transferred freely among the different entities. *Id*. ("Although Mr. Rowzani owns all of the companies, he is not the petitioner. Despite the common ownership, each of the four companies involved in the instant labor certification applications was a distinct legal entity. An individual who owns several companies, but who is not personally the sponsoring employer, cannot just mix and match the companies and aliens until an employer is found that can provide a bona fide offer for permanent full-time employment.").

Given that no proof of transfer existed and the lack of authority for Plaintiffs' other arguments, the Court must uphold the AAO's ruling that there was no valid successorship established in this case. Therefore, Dram of Chicago, Inc. lacks standing in this case.

While Plaintiffs fail to establish standing as to Dram LLC or Dram of Chicago, Inc.,

Plaintiffs assert that Takahashi has standing to pursue this appeal. Defendants respond that Takahashi could not benefit from a ruling in his favor in this case because adjustment of status, which Takahashi would seek if the I-140 petition is approved, is not available to an intending employment-based immigrant who does not have a valid nonimmigrant status, fails to maintain continuously a lawful status since entry into the United States and worked without authorization. *See* 8 U.S.C. §§1255(c)(2), (7) and (8). Plaintiffs do not dispute these points. (Gov't's Mot., Dkt. # 33, at 9.) They argue, however, that Takahashi was the beneficiary of an application for labor certification filed on or before April 30, 2001, which would allow him to apply for adjustment of status despite the violations noted above. *See* 8 U.S.C. § 1255(i)(1)(B)(2).

In support, Plaintiffs attach to their reply brief a copy of a letter dated September 10, 2001 from the Illinois Department of Employment Security to Roxalana Harasymiw, an attorney, stating "[t]his is to acknowledge receipt of the Application for Foreign Labor Certification" with a priority date of April 30, 2001. The letter lists the employer as Bistro Pacific and the foreign worker as Shoji Takahashi. (Pls.' Reply, Ex., Dkt. # 39-1.) The letter, however, is not accompanied by an affidavit attesting to its authenticity. Moreover, while stating that this earlier application by Bistro Pacific is not part of the administrative record but "was the proof of the INA section 245(i) eligibility that was submitted along with the I-140 visa petition" dated March 2007 (AR 502), Plaintiffs point to no evidence in support of that statement. Indeed, Plaintiffs do not dispute the government's statement of fact that the March 2007 I-140 visa petition was based on the approved labor certification application submitted by Dram LLC d/b/a Mirai Sushi in November 2004, not an April 2001 application filed by Bistro Pacific. (Pls.' Stmt. Facts & Resp. Stmt. Facts, Dkt. # 36, ¶ 1.) Finally, the government filed a supplemental statement, attaching an affidavit of the custodian of

records for the DOL's Employment and Training Administration, Renata Adjibodou, attesting that the DOL has no record of any permanent labor certification application filed by any employer on behalf of Takahashi during the year 2001. (Gov't's Supp. Stmt., Dkt. # 40.) For these reasons, the Court concludes that Takahashi has not demonstrated that he could take advantage of the benefit of 8 U.S.C. § 1255(i)(1)(B)(2) based on the purported April 30, 2001 application for labor certification.

Plaintiffs, however, contend that Takahashi still has standing because even if he were unable to adjust his status in the United States due to the violations noted above, he could still be eligible to obtain an immigrant visa to return to the United States as a lawful permanent resident if he were to go back to Japan and apply for such a visa after obtaining an approved I-140 petition. 8 C.F.R. § 204.5(n). This section states:

> An approved employment-based petition will be forwarded to the National Visa Center of the Department of State if the beneficiary resides outside of the United States. If the Form I–140 petition indicates that the alien has filed or will file an application for adjustment to permanent residence in the United States (Form I–485) the approved visa petition (Form I–140), will be retained by the Service for consideration with the application for permanent residence (Form I–485).

In its sur-reply, however, the government notes that because Takahashi has accrued over one year of unlawful presence in the United States after he overstayed his B-2 visitor's status, if he departs the United States, he is statutorily barred from seeking admission or entering the United States for ten years. *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II). Thus, even if he were to obtain an approved I-140 petition, he could not attempt to use it to re-enter the United States for ten years. During that period, any number of events could occur affecting his ability to obtain an immigrant visa, including that the company seeking to employ him may no longer exist, they may no longer need him as a chef, or he may not want to return to the United States. Accordingly, Takahashi lacks an actual and imminent injury in fact and it is more speculative than likely that a favorable decision

will redress his injury. *Wisconsin Right to Life State PAC v. Barland*, 664 F.3d 139, 146 (7th Cir. 2011) (To establish standing, a plaintiff must show, among other things, he has suffered an "injury in fact" that is actual and imminent and it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision).

Because no Plaintiff has standing to pursue this action, the Court dismisses it for lack of subject matter jurisdiction.

Merits

Even assuming, however, that any of the parties has standing, the Court, for the reasons discussed above, would uphold the decision of the AAO on the ground that Plaintiffs provided no independent objective evidence regarding the identity of the proper petitioner.

Moreover, Plaintiffs failed to establish Takahsahi's qualifications as concluded by the AAO. A U.S. employer is allowed to file a visa petition (Form I-140) for an alien if the employer intends to employ the alien as an eligible skilled worker. *See* 8 U.S.C. §§ 1153(b)(3)(A)(i). A skilled worker is given preference if he or she is "capable, at the time of petitioning…of performing skilled labor (requiring at least two years of training or experience), not of a temporary or seasonal nature, for which qualified workers are not available in the United States." 8 U.S.C. § 1153(b)(3)(A)(i). Additionally, a petitioner must establish that the beneficiary possessed all the education, training, and experience specified on the labor certification as of the primary date. 8 C.F.R. §§ 103.2(b)(1), (12). *See Wing's Tea House*, 16 I & N Dec. 158, 159 (BIA 1977). In this case, Plaintiffs were required to show that Takahashi had two years experience as a sushi chef with foreign educational equivalent accepted. (AR 35.)

The AAO rejected Takahashi's petition in part because he did not provide valid proof that

the qualifications were met.  (AR 34-36.)  Plaintiffs point to a letter dated March 20, 2014 from Jimmy Ma, stating that: "Takahashi worked for me as a full time employee from January 1, 1999 to December 30, 2002.  His work duties included but were not limited to supervising cooks, coordinating and participating in the activities of cooks.  He was required to use his Japanese Knife Skills while preparing sushi and other dishes. . . ."  (Pls.' Mem. Law Support Cross Mot. Summ. J. & Resp. Defs.' Mot. Summ. J., Dkt. # 35-1.)  As the government notes, however, the Court cannot consider the letter in evaluating Takahashi's qualifications because it was filed after the AAO's final decision and is not part of the administrative record.  (Defs.' Reply, Dkt. # 38, at 6.)  It is a "widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time the decision was made."  *IMS P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997).  *See also Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009) (courts generally limit their review of the agency's action to the administrative record before the agency); 5 U.S.C. § 706.  Accordingly, the Court finds the AAO's conclusion that Takahashi had failed to establish the requisite qualifications was not arbitrary and capricious or otherwise not in accordance with the law.[5]

**Conclusion**

---

[5]  Because the Court has upheld the AAO's decision on the grounds that Plaintiffs failed to identify the proper petitioner or establish that Takahashi had the requisite qualifications, the Court need not address whether Plaintiffs were capable of paying the proffered wage.

For the reasons stated above, Plaintiffs' motion for summary judgment [37] is denied and Defendants' motion for summary judgment [33] is granted.  Civil case terminated.

**Date**:  March 24, 2015

_Ronald A. Guzmán_
       **United States District Judge**
       **Ronald A. Guzmán**